**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*pro hac vice app. forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Stefan Bogdanovich (*pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

**KEMP JONES, LLP**
Michael Gayan, Esq. (Nev. Bar #11135)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
m.gayan@kempjones.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RACHEL CHACON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VEGAS.COM, LLC,<br><br>Defendant. | Case No.: 2:24-cv-2088<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Rachel Chacon("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action suit brought against Defendant Vegas.com, LLC ("Vegas.com") for ambushing consumers purchasing tickets to entertainment events with hidden junk fees. To get consumers to shop on its platform, Vegas.com advertises fee-less ticket prices, strings consumers along several checkout screens, and continues to represent that artificially low price as consumers input their credit card information, billing information, and ticket delivery information. Then, on the very final confirmation screen, in tiny grey font on the right corner of the screen, far away from the "COMPLETE BOOKING" button, Vegas.com sneaks in a service fee. Because Vegas.com repeatedly represents a fee-less ticket price throughout the entire purchase process, a consumer has no reason to be on the lookout for a tiny grey font fee is hidden in plain sight on the final confirmation page, *after* the consumer has already input her credit card, billing, and delivery information.

2. In the context of a Vegas magic show, such a sleight-of-hand would likely get met with applause. But in the context of an online transaction, it tricks consumers into paying fees they never noticed and never agreed to, in violation of various Nevada Deceptive Trade Practices Act provisions.

3. Vegas.com's drip pricing model violates Nevada's newly enacted Ticket Reseller provision, Nevada Revised Statutes, § 598.397 *et seq*. The law provides that "[a] reseller, a secondary ticket exchange or any affiliate of a reseller or secondary ticket exchange shall not resell a ticket, in person or remotely, <u>without first disclosing</u> to the purchaser the total amount that the purchaser will be charged for the ticket, including any <u>fees</u> which represent a portion of the total amount to be charged." Nev. Rev. Stat. Ann. § 598.39795 (emphasis added). Here, however, Vegas.com did not "<u>first disclos[e]</u>… the total amount… including… fees." Instead, in various bright colors, Vegas.com first disclosed a fee-less price, and only thereafter snuck in a fee at the end of the transaction.

4. Vegas.com's drip pricing[1] model is also a "deceptive trade practice." The law provides that "[a] person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she … (11) [a]dvertises … [ticket selling] services as being available free of charge with intent to require payment of undisclosed costs as a condition of receiving the goods [*i.e.* tickets] or [the ticket selling] services," or "(13) [m]akes false or misleading statements of fact concerning the price of goods or services for sale or lease," or "(14) [f]raudulently alters … written statement of charges or other document in connection with the sale or lease of goods or services." Nev. Rev. Stat. Ann. § 598.0915.

5. For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other ticket purchasers for all places of entertainment in the state of Nevada that used Vegas.com's website or mobile phone application, for actual and/or statutory damages, reasonable attorneys' costs and fees, and injunctive relief under Nev. Rev. Stat. Ann. §§ 598.3982.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant. Nev. Rev. Stat. Ann. § 598.3982(2)(b)-(d) provides for $1,000 in statutory damages for a Defendant's first violation, $2,500 for its second violation, and $5,000 in statutory damages for each subsequent violation. There are tens of thousands of members of the class, and so the amount in controversy figure is readily met.

7. This Court has personal jurisdiction over Defendant because Defendant operates a platform to purchase tickets to various place of entertainment in the State of Nevada, sells tickets to Nevada residents, and collects junk fees for its basic internet services.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

---

[1] Will Kenton, *Drip Pricing: What it Means, How it Works*, INVESTOPEDIA, (Jan. 24, 2023), https://www.investopedia.com/terms/d/drip-pricing.asp.

**PARTIES**

9. Rachel Cachon is an individual consumer who, at all times material hereto, was a citizen and resident of Glendale, California. On September 11, 2024 at 1:13 p.m., Plaintiff purchased two admission ticket to a Penn & Teller show at the Rio Hotel & Casino in Las Vegas on September 29, 2024 through Vegas.com, and saw a purchase flow substantially similar to the ones shown in Figures 1–10.

10. Defendant, Vegas.com, LLC, is a Nevada corporation with its principal place of business in Las Vegas, NV. Vegas.com owns and operates the website http://www.vegas.com.

**FACTUAL BACKGROUND**

**A.     Drip Pricing**

11. Vegas.com is one of many online ticket exchange platforms—like Ticketmaster, Eventbrite, or TickPick—that offers consumers the ability to purchase tickets to entertainment events online, via its website or its smartphone app.

12. "Drip pricing" is a type of bait-and-switch pricing method that refers to "the practice of advertising only part of a product's price upfront and revealing additional charges later as consumers go through the buying process."[2]

13. Behavioral economists largely agree that drip pricing causes consumers to overpay, by exploiting people's drive to complete a commenced purchase.[3] By luring people into a transaction with an artificially low price, a website designer can create a sense of commitment from the consumer to the transaction. By making the consumer click through several screens, the website designer forces the consumer to invest time into the transaction. After a seller has introduced surprise fees on the final screen, assuming the consumer even notices the fees, the consumer will still be reticent to leave due to a sense they will incur a loss by abandoning the transaction.

---

[2] Mary W. Sullivan, FED. TRADE COMM'N, ECON. ANALYSIS OF HOTEL RESORT FEES (2017), https://www.ftc.gov/reports/economic-analysis-hotel-resort-fees.

[3] Steffen Huck & Brian Wallace, THE IMPACT OF PRICE FRAMES ON CONSUMER DECISION MAKING: EXPERIMENTAL EVIDENCE 1—3 (Oct. 15, 2015).

14. The FTC has sought to regulate undisclosed junk fees, particularly in the live event ticket industry. In 2023, the FTC proposed a rule that would regulate drip pricing and other similar impositions of unfair and deceptive fees and conduct.[4] The proposed rule is still under consideration.

15. As part of the process, the FTC invited public comment on its proposed rule. One such commentator was TickPick, LLC. Like Vegas.com, TickPick is a seller of event tickets. However, unlike Vegas.com, TickPick does not engage in the deceptive practices alleged herein. According to TickPick, "[t]he first price you see for a ticket on TickPick is the price charged for that ticket[,]" which does not include "hidden fees, ever."[5]

16. At the same time, several states, like California and New York, have passed high-profile laws banning surprise junk fees. For example, in August 29, 2022, New York amended its laws to require: "[e]very … platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge … <u>prior to the ticket being selected for purchase</u>." N.Y. Arts & Cult. Aff. Law § 25.07(4) (emphasis added). Similarly, on July 1, 2024, California amended its laws to clarify that "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" was an "unlawful" "unfair or deceptive act or practice." Cal. Civ. Code § 1770(a)(29).

   **B.    Vegas.com's Website**

17. When a consumer visits Vegas.com she is brought to a page that allows her to search for Las Vegas shows, hotels, and flights and to specify a time period for those offerings. Additionally, she is provided with a variety of preselected "deals" on various shows being put on in Las Vegas.

---

[4] Trade Regulation on Unfair or Deceptive Fees, 88 Fed. Reg. 77,420 (proposed Nov. 9, 2023) (to be codified at 16 C.F.R. pt. 464).

[5] TickPick LLC, Comment Letter on Proposed Rule on Unfair or Deceptive Fees (Nov. 9, 2023), https://www.regulations.gov/comment/FTC-2022-0069-6078.



Figure 1



Figure 2

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                5

18. When a consumer seeks to purchase tickets to an Awakening dance show in Las Vegas, Nevada, Vegas.com fails to first disclose the total cost of the ticket, inclusive of all ancillary fees. Instead, Vegas.com "first discloses" a fee-less price.



**Figure 3**



**Figure 4**

19.     Much like California and New York, Nevada also prohibits this behavior. On July 1, 2019, amid much less fanfare than the New York or California laws, Nevada amended its Deceptive Trade Practices Act to add the following provision:

> A reseller, a secondary ticket exchange or any affiliate of a reseller or secondary ticket exchange shall not resell a ticket, in person or remotely, <u>without first disclosing</u> to the purchaser the total amount that the purchaser will be charged for the ticket, including any fees which represent a portion of the total amount to be charged.

Nev. Rev. Stat. § 598.39795.

20.  The Nevada law further provides that on this same screen:

> [A] reseller, a secondary ticket exchange or any affiliate of a reseller or secondary ticket exchange shall not … Resell a ticket <u>without first informing</u> the purchaser of the location in the entertainment facility of the seat or, if there is no assigned seat, the general admission area to which the ticket corresponds, including, without limitation, the row and section number of the ticket.

Nev. Rev. Stat. § 598.3979.

21.  By failing to "first disclos[e] to the purchaser the total amount that the purchaser will be charged for the ticket, including any fees" on this ticket selection screen, Vegas.com violated Nev. Rev. Stat. § 598.39795.  Vegas.com then compounded its deception by continuing to misrepresent a fee-less price for tickets through the Checkout process.

22.  After the consumer selects the show time she wants to attend, she is then directed to choose the quantity of tickets that she wishes to purchase.



**Figure 5**

23.  The consumer is then provided with a page where she may choose where in the venue she wishes to sit.  It is here, for the first time, that any possibility of a fee is disclosed, in tiny grey font, hidden next to the price of the ticket: "+ fees."  Though, the exact fee amount, if any, is not provided and all the ticket prices listed do not include any additional fees.  Figure 6, next page.



**Figure 6**

24. At every point in this process, Defendant goads consumers into rushing through the process by falsely portraying a limited supply of tickets through notifications such as "[b]ooked 40 times in the past 24 hours."



**Figure 7**

25. After a consumer clicks the blue "Buy Now" button in Figure 6, the consumer is taken to another page that begins the checkout process and asks the consumer for her name, number, and email address which is where the tickets are delivered to.



**Figure 8**

26. After a consumer clicks the yellow "ADD PAYMENT INFO" button in Figure 8, she is taken to the page to input her credit card information but is first, once again reminded of the falsely limited supply of tickets.



**Figure 9**

27. If the consumer exits out of the notification in Figure 9, she is taken to a billing information page, which asks for the consumer's credit card number and other payment details, including the consumer's name and address. Figure 10, next page.



**Figure 10**

28. It is here, in the right-hand side bar on this final screen, far away from the "COMPLETE BOOKING" button, that the fee amount is disclosed for the first and only time. This fee is not bolded, not underlined, not italicized, and in same grey font that is indistinguishable from the surrounding text on the screen. *See* Figure 10, above.

29. This sleight-of-hand is highly misleading and likely to trick reasonable consumers into paying more for tickets than they believed they would be. Reasonable consumers have no reason to be on the lookout for altered terms of purchase on the confirmation screen after they had

1  been presented with one price, and were continually presented that same price on all other screens,
2  as they submitted their personal information.

3        **D.**     **Plaintiff's Experience**

4        30.     On September 11, 2024 Plaintiff Rachel Chacon purchased two tickets for
5  admission to a September 29, 2024 Penn & Teller show at the Rio Hotel & Casino in Las Vegas,
6  Nevada using Vegas.com's website and the checkout flow she viewed was substantively the same
7  as the one depicted in this Complaint. Plaintiff was forced to pay Vegas.com's unlawfully applied
8  fees, even though they were never clearly and conspicuously disclosed to her.

9        31.     Plaintiff was harmed by paying this fee under false pretenses. At the time she
10 purchased her tickets, she does not recall even being aware they were charged. Plaintiff and her
11 pocketbook were also harmed by paying this unlawfully applied fee.

12       32.     Plaintiff was also harmed by not having the total cost of the tickets disclosed upfront
13 at the start of the purchase process. By not knowing the total cost of the tickets before Plaintiff
14 selected her tickets for purchase from Defendant, Plaintiff could not shop around for tickets from
15 other ticket sellers like EventBrite, or TickPick, just to name a few. As such, Plaintiff had no way
16 of knowing whether she was getting the best deal her money could buy. By hiding its fees,
17 Defendant was able to reduce price competition and cause harm to consumers like Plaintiff.

18       33.     At the time Plaintiff purchased her tickets, she was not aware that Defendant's
19 conduct was unlawful. She was not browsing websites in search of legal violations. Instead, she
20 was browsing Defendant's website because she sincerely intended to purchase event tickets, and
21 did, in fact, purchase those tickets.

22       34.     Because Vegas.com failed to "first disclose" its fees to Plaintiff, it also harmed
23 Plaintiff by causing her to waste time clicking through several screens. Plaintiff is busy and her
24 time is worth money.

25 <center>**CLASS ALLEGATIONS**</center>

26       35.     **Nationwide Class Definition**: Plaintiff seeks to represent a class of similarly
27 situated individuals defined as all persons in the United States who purchased tickets to an event in
28 Nevada using Vegas.com's website from November 7, 2020 to the present.

36. **Nevada Subclass Definition**: Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the state of Nevada who purchased tickets to an event in Nevada using Vegas.com's website or mobile application from November 7, 2020 to the present.

37. Members of the Nationwide Class and Nevada Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Nationwide Class and Nevada Subclass number in the hundreds of thousands. The precise number of Nationwide Class and Nevada Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Nationwide Class and Nevada Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

38. Common questions of law and fact exist as to all Nationwide Class and Nevada Subclass members and predominate over questions affecting only individual Nationwide Class and Nevada Subclass members. Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to first disclose the total amount, including all ancillary fees, it would be charging class members before reselling the tickets in violation of Nevada Revised Statutes § 598.39795; (b) whether Defendant falsely advertised its ticket selling services as being available free of charge in violation of Nevada Revised Statutes § 598.0915(11); (c) whether Defendant made false and misleading statements of fact concerning the price of its tickets and ticketing selling services in violation of Nevada Revised Statutes § 598.0915(13); and (d) whether Defendant fraudulently altered its written statement of charges in connection with its sale of tickets in violation of Nevada Revised Statutes § 598.0915(14).

39. The claims of the named Plaintiff are typical of the claims of the Nationwide Class and Nevada Subclass in that the named Plaintiff and the Nationwide Class and Nevada Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to first disclose the total amount of its tickets, including Defendant's fees, throughout the online ticket purchase process.

40. Plaintiff is an adequate representative of the Nationwide Class and Nevada Subclass because her interests do not conflict with the interests of the Nationwide Class and Nevada

Subclass members they seek to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Nationwide Class and Nevada Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

41. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Nationwide Class and Nevada Subclass members. Each individual Nationwide Class and Nevada Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION
### COUNT I
### Nevada Revised Statutes § 598.39795
### (On Behalf Of The Nationwide Class and Nevada Subclass)

42. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

43. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

44. Vegas.com is "a reseller" or "secondary ticket exchange" because it owns, operates, or controls the Vegas.com website and smartphone application, which allows users to buy and sell tickets to various events in Nevada.

45. Vegas.com resold tickets to Plaintiff and Class members.

46. Vegas.com violated Nevada Revised Statutes § 598.39795 by reselling tickets to Plaintiff and Class members "without first disclosing to the purchaser the total amount that the

purchaser will be charged for the ticket, including any fees which represent a portion of the total amount to be charged," as depicted in Figures 3—8 of this complaint.

47. On behalf of herself and members of the Nationwide Class and Nevada Subclass, Plaintiff seeks to recover statutory damages from $1,000 to $5,000 per violation. *See* Nev. Rev. Stat. Ann. § 598.0915.

**COUNT II**
**Nevada Revised Statutes § 598.0915**
**(On Behalf Of The Nationwide Class and Nevada Subclass)**

48. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

49. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

50. Vegas.com committed several deceptive trade practices in violation of the NDTPA. First, Vegas.com advertised its ticket selling services as being available free of charge with the intent to require payment of undisclosed costs as a condition of receiving the tickets and ticket selling services, as depicted in Figures 3, 4, and 7 of this Complaint. Second, Vegas.com made false or misleading statements of fact concerning the price of its tickets and ticket selling services by quoting consumers a fee-less price for tickets in Figures 3, 4, and 7 of this Complaint. Third, Vegas.com fraudulently altered its written of charges by quoting consumers fee-less ticket prices in Figures 3, 4, and 7 of this Complaint, only to sneak in its fees later during the purchase process, as depicted in Figure 10 of this Complaint.

51. Plaintiff and Class members were harmed by paying Vegas.com's fees.

52. Plaintiff and Class members relied on Vegas.com's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

53. Vegas.com's aforementioned deceptive trade practices tricked Plaintiff and Class members into paying Vegas.com's exorbitant fees. But for Vegas.com's deceptive trade practices, Plaintiff and class members would not have either bought tickets from Vegas.com or would have been willing to pay substantially less for them. Had Vegas.com transparently disclosed it charges service fees, Plaintiff and Class members likely would have purchased tickets to the exact same

event from another website, like TickPick or MegaSeats, which do not charge any service fees. *See, e.g.*, https://www.tickpick.com/; https://www.megaseats.com/.

54. As a direct and proximate result of Defendant's violations of the NDTPA, Plaintiff and Class members are victims of "consumer fraud" under Nev. Rev. Stat. Ann. § 41.600(2)(e), and have suffered damages. Plaintiff and Class members thus seek all relief available under Nev. Rev. Stat. Ann. § 41.600, including all damages sustained as a result of Defendant's violations of the NDTPA, and an award of reasonable attorneys' fees and costs of suit.

55. On behalf of herself and members of the Nationwide Class and Nevada Subclass, Plaintiff seeks to recover her actual damages, punitive damages, restitution, and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide Class and Nevada Subclass, prays for judgment as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief; and

(g) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 7, 2024

By:    /s/Michael Gayan

**KEMP JONES, LLP**
Michael Gayan, Esq. (Nev. Bar #11135)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
m.gayan @kempjones.com

**BURSOR & FISHER, P.A**.
Philip L. Fraietta (*pro hac vice app. forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Stefan Bogdanovich (*pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*